# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **JESSICA ENGLETON O/B/O A.E.** | * | **CIVIL ACTION NO. 06-1826** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Jessica Engleton filed an application for child's supplemental security income (SSI) payments on May 13, 2004, on behalf of her son, A.E., born September 15, 1992, based on attention deficit disorder, with an onset date of November 1, 2001.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards.  *Anthony v.*

---

[1]Claimant also filed an application on January 16, 2001.  After initial denial, he filed a request for hearing, which was dismissed as untimely.  Another application filed on July 17, 2003, was denied initially and not further pursued.

*Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) School Function Form dated April 6, 2001**.  Claimant's second grade teacher, Angie Smith, reported that claimant was functioning at an age-appropriate level academically.  (Tr. 100).  As to motor functioning, he had handwriting problems.  He had no communicative problems.

Regarding behavior functioning, Ms. Smith reported that claimant cried often when he was upset or mad.  (Tr. 101).  She also stated that he loved to hit and kick in a playful manner, but was never aggressive.  She said that he did not have many friends, because he loved to hit and kick.  (Tr. 102).  He loved the attention of adults, and tried to talk to them all of the time.

Regarding concentration, persistence, and pace, claimant was always or usually able to comply.  However, he disrupted the class because he wanted attention, which was a daily occurrence.  (Tr. 103).

**(2) Teacher Questionnaire dated May 27, 2004**.  Claimant's fourth grade teacher, Sara Berard, reported that claimant had no problems as to acquiring and using information.  (Tr. 136).  He had some obvious problems as to attending and completing tasks.  (Tr. 137).  As to interacting and relating with others, claimant had

2

been suspended for fighting on two occasions because he did not express his anger appropriately.  (Tr. 138).  He had no problems as to moving about and manipulating objects.  He had to be constantly reminded how to conduct himself when eating lunch.  (Tr. 140).

Ms. Berard stated that when on medication, claimant was a model student.  (Tr. 141).  However, when he forgot his medication, he was uncontrollable.

**(3) Records from Johnston Street Elementary dated September 2, 2003 to April 27, 2004**.  Claimant's teacher, Renée Savoy, reported on several occasions that claimant was disturbing class, behaving inappropriately, not following directions, being uncooperative and disobedient, being rude and disrespectful, teasing, throwing spitballs, having body contact, being unprepared for class, and not doing his homework.  (Tr. 143, 146-51, 153-57, 159-69).  His grades ranged from A's in spelling and conduct to F's in language arts, social studies, and math.  (Tr. 145, 152, 158, 189).

**(4) Teacher Questionnaire dated May 27, 2004**.  Ms. Savoy, claimant's fifth grade teacher, reported that claimant had no problems as to acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself.  (Tr. 171-75).  She noted that his functioning changed after taking medication.  (Tr. 176).

(5) **Student Progress Report dated February 20. 2006 to March 15, 2006**. Claimant's grades ranged from As in health, spelling, and reading  to Cs and D's in social studies, science, and math.  (Tr. 192-95).  He had A's in conduct.  (Tr. 194).

(6) **Records from New Iberia Mental Health dated January 31, 2000 to October 2, 2000**.  Claimant was seen on January 31, 2000 for violence/danger to others, a family problem, problems coping with daily roles/activities, social/interpersonal problems, and education problems.  (Tr. 211).  The assessment was attention deficit disorder and parent-child problem.

(7) **Childhood Disability Evaluation Form dated June 15, 2001**.  Lawrence Klusman, Ph.D., assessed claimant for a history of ADHD.  (Tr. 215).  He determined that claimant's impairment was severe, but did not meet, medically equal, or functionally equal the listings.  He found that claimant had no limitations in any domains, except that he had less than marked limitations as to interacting and relating with others.  (Tr. 217-18).

(8) **Letter from Dr. Jill Gregg Brown dated August 25, 2003**.  On October 28, 2002, claimant, who had ADHD, and had been off of his medications since July of 2002.  (Tr. 221).  Dr. Brown re-started Metadate-CD.  When claimant returned with his mother on December 9, 2002, his mother reported that his conduct and grades were still bad.  Dr. Brown increased his medication.

On January 15, 2003, claimant's mother reported that the medication was working well.  Claimant and his mother failed to show up for the follow-up visit. When they returned on May 7, 2003, claimant was getting an F in conduct.  Dr. Brown continued the medication.

Claimant was a no-show on August 5, 2003, but appeared for an appointment on August 19.  At that time, his mother reported that he had failed the fourth grade. His physical exam was unremarkable.   Dr. Brown changed his medication to Concerta.

Dr. Brown thought that they could get claimant under control.  She noted that it would take time and cooperation from the parents, but once he got on the appropriate dose, he would probably do fine.

**(9) Childhood Disability Evaluation Form dated September 11, 2003**. Cathy Castille, Ph.D., opined that claimant's ADHD impairment was severe, but did not meet, medically equal, or functionally equal the listings.  (Tr. 222).   He had no limitations as to acquiring and using information, moving about and manipulating objects, caring for himself, and health and physical well-being.  (Tr. 223, 225).  He had less than marked limitations as to attending and completing tasks and interacting and relating with others.  (Tr. 224).

**(10) Letter from Dr. Brown dated June 18, 2004**.  When claimant returned on September 18, 2003, he was talking a great deal, according to his teacher.  (Tr. 228).  However, his mother was not giving him his medications on the weekend.  Dr. Brown instructed claimant's mother that she needed to give him the medications consistently.

On October 15, 2003, claimant and his mother reported that the medications were not working.  He continued to fight in school.  Dr. Brown changed his medication to Ritalin-LA.

When claimant returned a month later, he was doing well.  He was doing fairly well on March 1, 2004, with no bad reports from his teacher.  Dr. Brown opined that he was doing well on his medication, and continued his Ritalin-LA.  (Tr. 229).

Dr. Brown stated that as long as claimant was on his medications, learning, motor functioning, performing self care activities, communicating, socializing, and completing tasks were not problems for him.  She opined that he was controlled on his medicines.  However, she had no doubt that he would have certain limitations when he was not on his medications.

**(11) Consultative Psychological Evaluation by Henry J. Lagarde, Ph.D., dated August 24, 2004**.  Claimant was able to bathe and dress himself, but his mother had to make sure that he bathed correctly.  (Tr. 230).  He could button and tie.  He

enjoyed watching television.  His mother reported that claimant had tried to kill animals, so she had to watch him.  He assisted with simple household chores.  He had recently begun to "snap back" at his mother.  He argued often with his sister.  He had no friends with whom he spent time.

Dr. Lagarde observed that claimant manifested restless and fidgety behavior during the evaluation, and some difficulties regarding attention and concentration. (Tr. 231).  He also had problems with cognitive structuring of his personal and social experiences.  His diagnosis was attention deficit hyperactivity disorder.  (Tr. 232).

Dr. Lagarde opined that claimant was able to acquire and use information, particularly when he was taking his medication.  He noted that claimant possibly was deliberately presenting himself in a negative light, whereas he appeared to do his best at other times.  His history indicated that he had periods of adequate adaptation at school with respect to both behavior and academics.  He appeared to be able to attend to and complete tasks when taking appropriate medication.  At that time, he appeared to have difficulty relating satisfactorily with others because of problems conceptualizing routine social relationships.  He was able to move about and manipulate objects, and to care for himself consistent with his age.

**(12) Records from Iberia Comprehensive Community Health Clinic dated June, 2004 to October 7, 2004**.  Claimant was referred for ADHD and hurting

animals. (Tr. 235). On mental status exam, he was hyperactive. He was impaired as to concentration and attention. The impression was ADHD. He was prescribed Adderall. (Tr. 237-38, 248-49).

**(13) Childhood Disability Evaluation Form dated October 18, 2004**. Dr. Castille determined that claimant's impairment of ADHD was severe, but did not meet, medically equal, or functionally equal the listings. (Tr. 239). He had no limitations, except for less than marked limitations as to attending and completing tasks. (Tr. 241, 243).

**(14) Claimant's Administrative Hearing Testimony**. At the hearing on June 7, 2006, claimant was represented by attorney Jo Ann Nixon. He was 13 years old, and going into the seventh grade. (Tr. 260). He was in regular classes, and was making A's, B's, C's, and D's. (Tr. 261). He stated that he played basketball and ran track.

Claimant testified that he had friends. He stated that he helped his mother a lot. He reported that he got along with his teacher "[a]ll right." (Tr. 262). He also said that he got along pretty good with his sister. (Tr. 265). He complained that his medication made him lose his appetite.

Claimant reported that he did not have any problems with bathing himself or getting ready for school. (Tr. 266). He testified that since he had been on his

medications, he did not have any difficulty with staying on his tasks in school.  He stated that he had not hurt animals in over three years.

**(15) Claimant's Mother's Administrative Hearing Testimony**.  Claimant's mother, Jessica Engleton, testified that claimant killed animals.  (Tr. 262).  She also stated that he had "nerve problems."  She reported that he was doing "all right" in school.  She said that he had friends "sometimes."

Ms. Engleton testified that claimant had been taken off of Adderall.  She reported that he did not take medication during the summer.  (Tr. 263).  She stated that the medication was helping.  (Tr. 264).

**(16) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the ALJ should have reopened his first application, and (2) the ALJ failed to properly consider the evidence.

As to the first argument, claimant stated that he had timely requested a hearing regarding the denial of his first application filed on January 16, 2001. [rec. doc. 8, p. 3].  The record reflects that claimant's first application was denied on June 22, 2001. [rec. doc. 39].  However, claimant did not file a request for hearing until October 21, 2001, which was two months after the 60-day deadline. [rec. doc. 43].

Under the Social Security regulations, a determination, revised determination, decision, or revised decision may be reopened--

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

(c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

20 C.F.R. § 416.1488

Here, claimant asserts that "good cause" exists for reopening the first application. [rec. doc. 8, p. 4]. The regulations provide that good cause to reopen a determination or decision exists if:

(1) New and material evidence is furnished;

(2) A clerical error was made; or

(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

20 C.F.R. § 416.1489.

Here, claimant has not asserted "good cause," other than bare allegations, for reopening this claim. [rec. doc. 8, p. 4]. *See, Torres v. Shalala*, 48 F.3d 887, 890 (5th Cir. 1995) (citing *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (federal court review of the Commissioner's denial of a request

to reopen a claim lies only where a colorable constitutional claim is at issue).  As no good cause exists for reopening, this argument lacks merit.

Next, claimant argues that he is still receiving medical treatment, and that the success of the therapy has not been established by the evidence. [rec. doc. 8, pp. 6-7]. However the records from the physicians and teachers, as well as the testimony of claimant and his mother, consistently reflect that claimant's ADHD was well-controlled on medication. (Tr. 141, 176, 221, 229, 232, 264, 266).  If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  Thus, the ALJ's finding that claimant was not disabled is entitled to deference.

Accordingly, based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of

any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed September 18, 2007, at Lafayette, Louisiana.

_C. Michael Hill_

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE